**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**WILLIAM CHESTER COLE,**
        **Petitioner,**

**v.**                                          **Case No.  3:09cv216/WS/MD**

**WALTER A. MCNEIL,**
        **Respondent.**
_____

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  (Doc. 1).  Respondent has filed a motion to dismiss the petition as time-barred, providing relevant portions of the state court record.  (Docs. 15, 23). Petitioner has responded in opposition to dismissal.  (Doc. 21).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration, it is the opinion of the undersigned that the pleadings and attachments before the court show that the petition is timely.

## BACKGROUND AND PROCEDURAL HISTORY

<u>Background</u>

This petition involves petitioner's challenge to the Florida Department of Corrections' application of early release credits.[1]  Petitioner presents two claims:

_____

[1]Petitioner is in the custody of the DOC pursuant to Florida state court judgments.

an overcrowding credits claim and a gain time claim.  (Doc. 1, p. 7 in ECF).[2]  The relevant background and procedural history, which is either undisputed or established by the record, is as follows.

Petitioner was initially received into the Florida Department of Corrections ("DOC") on December 18, 1958, having been sentenced in Escambia County Circuit Court Case Number 58-319 to five concurrent life sentences for Robbery.  (Doc. 15, Ex. A; Ex. B, pp. 21-26 in ECF).[3]  That same date, petitioner was sentenced in Escambia County Circuit Court Case number 58-221 to a three-year term of imprisonment for Larceny of a Motor Vehicle, to run concurrently with the sentences imposed in Case Number 58-319.  (Ex. B, pp. 10-11, 27-31 in ECF).

On May 31, 1959, petitioner escaped from custody.  He was recaptured and returned to state custody the next day.  (Ex. A).

On February 22, 1960, petitioner was sentenced to an additional ten years in Santa Rosa County Circuit Court Case Number 1232 for an offense committed on December 14, 1957.  (Ex. A; Ex. B, pp. 12-15, 32-35 in ECF).  The sentence was run concurrent to his life sentence.

On August 6, 1960, Petitioner escaped from custody again.   He was recaptured approximately six months later.  (Ex. A).

On March 3, 1964, petitioner was released to parole by order of the Florida Parole Commission ("FPC").  (Ex. A; Ex. B, p. 37 in ECF).  On March 12, 1965, petitioner's parole was revoked and he was returned to DOC custody.  (Ex. A; Ex. B, pp. 36-37 in ECF).

One year later, petitioner escaped from custody again.  (Ex. A; Ex. B, pp. 38-41 in ECF).  He was recaptured, convicted of Escape in Bradford County Circuit Court Case Number 2025, and sentenced to ten years imprisonment.  (*Id.*).

---

[2]References to page numbers "in ECF" are to the page of the identified document as it appears on the court's Case Management/Electronic Computer Filing system.

[3]References to exhibits are to those attached to Doc. 15, unless otherwise noted.

On October 9, 1973, petitioner was convicted of Possession of a Weapon by a State Prisoner in Bradford County Circuit Court Case Number 73-133, and sentenced to five years imprisonment to run consecutively to his other sentences. (Ex. B, pp. 42-45 in ECF).

On July 26, 1977, petitioner was released to parole a second time by order of the FPC.  (Ex. A; Ex. B, pp. 59-60 in ECF).  He subsequently violated his parole and its was revoked.  (Ex. B, pp. 61-62 in ECF).  On  September 4, 1987, petitioner was returned to DOC custody on the parole revocation and on a sentence of thirty-five years imprisonment imposed by the Escambia County Circuit Court in Case Number 87-1084 for Harboring an Escaped Prisoner (5 years) and Solicitation to Commit Murder (30 years, consecutive to the 5 years).  (Ex. A; Ex. B, pp. 46-56 in ECF; *see also* Doc. 21, p. 4 in ECF).

At this point, petitioner's total term of imprisonment was the life sentences, followed by the ten-year sentence, followed by the five-year sentence, followed by the thirty-five year sentence.

On November 19, 2002, petitioner was released to parole from all of his parole-eligible sentences, which included the life sentence in Case Number 58-319 (which petitioner was serving at the time parole was granted), the consecutive ten-year sentence in Case Number 2025, and the consecutive five-year sentence in Case Number 73-133.  (Ex. B, pp. 58, 70 in ECF).  However, petitioner's thirty-five year sentence in Case number 87-1084 was <u>not</u> parole eligible;[4] therefore, he was paroled from his parole-eligible sentences <u>into</u> his thirty-five year sentence.  Thus, on November 19, 2002, the date of his parole, petitioner began serving his thirty-five year term in Case Number 87-1084.  (Ex. A).  Once he completes the thirty-five year sentence, the DOC will reactivate his parole-eligible sentences, and the FPC will decide whether he will be released to parole.  (*Id.*).

---

[4]The parties do not dispute this fact.  (Doc. 15, p. 3 in ECF; Doc. 21, p. 4 in ECF).

## Procedural History

Petitioner exhausted his administrative remedies with respect to his two claims in separate grievance proceedings. The grievance proceedings were completed on the same day, August 21, 2003, which is the day the final agency decisions were filed with the agency clerk. (Exs. K, L).

On September 19, 2003, petitioner filed a petition for writ of mandamus in the Okaloosa County Circuit Court claiming that the DOC failed to properly apply overcrowding credits and gain time credits to his sentences. (Doc. 1, p. 2 in ECF; Ex. C, Docket Sheet for Okaloosa Case Number 03-3846). On November 17, 2003, that court transferred the case to the Leon County Circuit Court. (Ex. C). Once received in the Leon County Circuit Court, petitioner's case was assigned Case Number 03-2797. (Ex. D). The petition was dismissed on December 11, 2003 for lack of jurisdiction, the court finding that petitioner's challenge could only be brought in the sentencing court . (*Id.*). Petitioner did not appeal the decision. (Doc. 1, p. 4 in ECF; *see also* Ex. D, p. 77 in ECF).

Petitioner then attempted to litigate his claims in the sentencing court. On January 14, 2004, petitioner filed a petition for writ of mandamus in the Escambia County Circuit Court. (Doc. 1, p. 4 in ECF; *see also* Ex. F, p. 22 in ECF).[5] The petition

---

[5]Petitioner states that he filed his mandamus petition on January 14, 2004. (Doc. 1, p. 4 in ECF). The copy of the petition included in the state court record contains a certificate of service signed by petitioner in which he certifies that "a true copy of the foregoing petition for, 'writ of mandamus,' (with all exhibits) has been furnished to the respondent, Mr. James V. Crosby, Jr. . . . on this the 14th day of January, 2004." (Ex. F, p. 22 in ECF). The state court stamped the petition as filed on June 24, 2004, (*id.*, p. 12 in ECF), and the docket sheet submitted by respondent shows that the petition was deemed filed on that date in Escambia County Case Number 04-1240. (*Id.*, p. 10 in ECF).

Pursuant to the "mailbox rule," which Florida courts apply to post-conviction pleadings filed by *pro se* prisoners, *see Haag v. State*, 591 So.2d 614, 617 (Fla.1992), the date a prisoner delivers a petition or other filing to prison authorities for mailing is considered to be the date of filing with the court. *Haag*, 591 So.2d at 617 ("Under the mailbox rule, a petition or notice of appeal filed by a pro se inmate is deemed filed at the moment in time when the inmate loses control over the document by entrusting its further delivery or processing to agents of the state. Usually, this point occurs when the inmate places the document in the hands of prison officials.") (citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)); *see also Taylor v. Williams*, 528 F.3d 847, 850 (11th Cir.

was assigned Case Number 04-1240, and dismissed as untimely on October 17, 2005. (*Id.*, pp. 26-29).  The dismissal order noted that the Leon County Circuit Court's dismissal of petitioner's 2003 mandamus petition for lack of jurisdiction was incorrect, but that petitioner had not appealed the order.  The court went on to hold that petitioner's present mandamus challenge to the DOC's application of sentence credits was untimely because it was not filed within thirty days from the time administrative remedies were exhausted. (*Id.*).  Rehearing was denied on November 21, 2005. (*Id.*, p. 30 in ECF).  Petitioner sought review of the order by filing a notice of appeal in the Florida First District Court of Appeal ("First DCA"). (Ex. G).[6]  The

---

2008) (holding that in determining when a state habeas petition has been "properly filed," for purposes of 28 U.S.C. § 2244(d)(2), the court looks to the applicable state law governing filings).  In the absence of an institutional or prison mail stamp, the date indicated on the certificate of service is presumed to be the date of filing. *See  Thompson v. State*, 761 So.2d 324, 326 (Fla. 2000); *Griffin v. Sistuenck*, 816 So.2d 600, 601-602 (Fla. 2002) (quoting *Thompson*).  Respondent has failed to rebut the presumption that the petition was filed on January 14, 2004, the date specified in the certificate of service.

Although petitioner's certificate of service expressly states that a copy of the petition was being delivered to prison officials for mailing to the State Attorney, the document itself was addressed to the Escambia County Circuit Court.  The form certificate of service provided in Fla.R.App.P. 9.420(d)(2) requires a pro se inmate to "certify that I placed this document in the hands of . . . (here insert name of institutional official) . . . for mailing to . . . (here <u>insert name or names</u>) . . . on . . . (date). . . ." (emphasis added).  A traditional certificate of service, whether under the Florida rules or as seen in this court, does not reflect service on the court but on opposing parties or counsel.

In addition to the certificate of service, petitioner has filed documentation demonstrating that the mandamus petition was received by the Escambia County Circuit Court clerk's office sometime prior to February 3, 2004 and initially processed as a filing in petitioner's criminal case, Case Number 87-1084.  (Doc. 21, Exs. C-J, pp. 25-33 in ECF).  It was then lost.

In light of all of the foregoing, the court finds that petitioner delivered his mandamus petition to prison officials for mailing on January 14, 2004; therefore, it is considered "filed" on that date. *See, e.g., Sargent v. McNeil*, No. 4:08cv175/SPM/WCS, 2009 WL 903279 (N.D. Fla. Mar. 31, 2009) (holding, in similar circumstances, that pro se prisoner was entitled to the benefit of the prison mailbox rule, despite the prisoner's failure to comply with the procedure of obtaining a stamp from the correctional facility bearing the date and the inmate's initials; prisoner executed certificate of service, and correctional facility officials failed to rebut the presumption that the prisoner's document was filed on the date specified in the certificate).

[6]Petitioner sought review of the Escambia County Circuit Court's order by filing both a notice of appeal and a separate petition for writ of certiorari in the First DCA.  The appeal was assigned case number 1D05-5481, and the certiorari proceeding was assigned Case Number 1D05-5690.  The

case was assigned Case Number 1D05-5481.  On February 28, 2007, the First DCA affirmed the dismissal order without written opinion.  *Cole v. State,*  950 So.2d 486 (Fla. 1st DCA 2007) (copy at Ex. G, p. 34 in ECF).  Senior Judge Richard Ervin, III concurred in a written opinion.  Judge Ervin agreed that petitioner's mandamus petition in the Escambia County Circuit Court was untimely, and additionally found that the Leon County Circuit Court's dismissal of petitioner's mandamus petition for lack of jurisdiction was incorrect.  Judge Ervin advised petitioner that he "retain[ed] the option of seeking relief from judgment via Florida Rule of Civil Procedure 1.540(b) in the Leon County Circuit Court at any time on the ground that the

---

certiorari proceeding was dismissed on February 2, 2006 for petitioner's failure to pay the filing fee. (Ex. H).  It was noted in an order entered in 1D05-5481 that the certiorari proceeding was duplicative of the appellate proceeding in 1D05-5481.  (Ex. H, p. 3 in ECF).

       The certiorari proceeding does not warrant a separate discussion, because it occurred within the time period in which petitioner's appellate proceeding in 1D05-5481 was pending.

judgment entered was void."[7]  The mandate issued March 27, 2007.  (Ex. G, p. 33, in ECF).

After receiving the First DCA's decision, petitioner returned to the Leon County Circuit Court and filed a pleading entitled "Motion to Reinstate Plaintiff's Former Writ Of Mandamus, Dismissed By This Honorable Court For Lack Of Jurisdiction."  (Doc. 15, Ex. D, pp. 85-91 in ECF).  The pleading was docketed in the old mandamus case, Leon County Case Number 03-2797.  The parties agree, and the Leon County Circuit Court docket sheet indicates, that the motion was filed on March 16, 2007.[8]  (Doc. 1, p. 5 in ECF; Doc. 15, p. 5; Ex. D, Docket Sheet for Leon County Case Number 03-2797, p. 77 in ECF).  In his motion, petitioner stated that the cause was being "returned" to the court "by way of" the First DCA's February 28,

---

[7]The following is Senior Judge Ervin's opinion in its entirety:

Inmate William Chester Cole seeks review of an order dismissing his petition for writ of mandamus challenging the Department of Corrections's [sic] calculation of gain time credits applied to his sentences.  Relying on *Kalway v. Singletary*, 708 So.2d 267 (Fla. 1998), which had held that a petition for extraordinary relief must be filed within 30 days from the time that administrative remedies are exhausted, the lower court dismissed the petition as time-barred, noting that Cole had previously filed a petition for the same relief in the Leon County Circuit Court, resulting in the dismissal of the action for lack of jurisdiction on the ground that the relief sought constituted a collateral challenge to his sentence; as a consequence, the court in Leon County concluded that the sentencing court, which it was not, should entertain the petition.

The lower court's order correctly noted that the dismissal was incorrect, citing *Burgess v. Crosby*, 870 So.2d 217 (Fla. 1st DCA 2004) (challenge to gain time determination is not a collateral challenge to a sentence).  Because Cole did not appeal the prior dismissal, the lower court dismissed the challenge for the reason that it was untimely filed.

Notwithstanding the dismissal of his action, Cole retains the option of seeking relief from judgment via Florida Rule of Civil Procedure 1.540(b) in the Leon County Circuit Court at any time on the ground that the judgment entered was void.

*Cole v. State*,  950 So.2d 486 (Fla. 1st DCA 2007) (Ervin, J., concurring).

[8]The copy of the motion appearing in the state court record bears the date April 13, 2007 on the execution page and certificate of service.  (Doc. 15, Ex. D, p. 91 in ECF).  Nonetheless, because the parties agree, and the state court docket sheet indicates, that the motion was filed on March 16, 2007, the court deems that the filing date.

2007 order, and asserted jurisdiction under Florida Rule of Civil Procedure 1.540(b). (Doc. 15, Ex. D, p. 85 in ECF). Petitioner went on to describe the procedural history of the case, followed by argument on the merits of his sentence credit claims. (*Id.*, pp. 86-91 in ECF). On April 11, 2007 the circuit court issued the following order striking the motion:

> This cause is before the court upon petitioner's "Motion to Reinstate Plaintiff's Former Writ of Mandamus, Dismissed by This Honorable Court for Lack of Jurisdiction" filed March 16, 2007. The final order in this case was entered December 11, 2003.
>
> The pending motion cannot be considered a motion for rehearing of the final order because motions for rehearing must be filed within 10 days of the date of the order challenged. Fla.R.Civ.P. 1.530(b). After the expiration of 10 days, the trial court loses jurisdiction in this case. *Mid-State Homes, Inc. v. Ritchie*, 181 So.2d 725 (Fla. 1st DCA 1966). Likewise, the motion cannot be considered a motion for relief from the order under Rule 1.540, Florida Rules of Civil Procedure because none of the limited grounds listed in that rule are alleged in the motion. On the date the motion was filed, over three years after the final order was entered, this court had no jurisdiction to review any matters in this case.
> Accordingly, the motion to reinstate is hereby STRICKEN as an unauthorized motion in a case over which this court no longer has jurisdiction.

(Doc. 23, Attach. 1, pp. 4-5 in ECF). Petitioner's motion for rehearing was denied on May 18, 2007. (*Id.*, p. 7 in ECF). Petitioner filed an appeal in the First DCA seeking review of the May 18, 2007 order denying rehearing. (Ex. E). The appeal was assigned First DCA Case Number 1D07-2921. (*Id.*). It was dismissed on August 14, 2007, pursuant to petitioner's second motion for voluntary dismissal under Florida Rule of Appellate Procedure 9.350(b). (*See* Ex. E, pp. 2, 3 and 8 in ECF).

Meanwhile, on April 19, 2007 the Leon County Circuit Court opened a new mandamus case using, as the originating petition, petitioner's "Motion to Reinstate Plaintiff's Former Writ Of Mandamus, Dismissed By This Honorable Court For Lack Of Jurisdiction" – the same motion that was stricken from Case Number 03-2797.

(Ex. I, pp. 5, 8 in ECF; Doc. 23, Attach. 1, pp. 8-54 in ECF).[9]  **The new mandamus case was assigned Case Number 07-1368.  (***Id.***).  The court denied relief on the merits in an order dated November 16, 2007.  (Ex. I, pp. 8-11 in ECF).  Petitioner appealed the denial of relief, but was unsuccessful.  *Cole v. McNeil*, No. 1D07-6369, 4 So.3d 1223 (Fla. 1st DCA 2009) (Table) (copy at Ex. J, p. 15 in ECF).  The mandate issued March 26, 2009.  (Ex. J, p. 14 in ECF; *see also* Doc. 21, Ex. B, p. 21 in ECF).  Petitioner's motion for rehearing was denied on April 24, 2009.  (***Id.***).**

**Petitioner filed the instant federal habeas petition on May 14, 2009.  (Doc. 1, p. 1 in ECF).**

## DISCUSSION

**Because petitioner filed this § 2254 petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA governs the present petition.  *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *cf. Medberry v. Crosby*, 351 F.3d 1049, 1060-61 (11th Cir. 2003) (holding that a federal habeas petition brought by a prisoner in custody pursuant to the judgment of a state court is subject to 28 U.S.C. § 2254 with its attendant restrictions, regardless of whether the prisoner is challenging his underlying conviction and sentence or his continued state custody resulting from an administrative decision).**

---

[9]**Petitioner had apparently submitted two or more copies of his motion to reinstate introduced by a cover page entitled "Petition for Writ of Mandamus."  (See Doc. 23, Attach. 1, p. 9 in ECF and p. 47 in ECF).  On one cover page the institutional stamp appears on the bottom left-hand portion of the page, and on the other cover page the institutional stamp appears at the bottom right-hand portion of the page.  (***Id.***).  Both stamps contain petitioner's initials, and both indicate that petitioner placed them in the hands of prison officials for mailing on April 13, 2007.  Nonetheless, the motions are identical to the motion to "reinstate" filed in Case No. 03-2797, so it appears the court simply used a copy of that motion to initiate the new mandamus case.  This is confirmed in the court's November 16, 2007 order.  (Ex. I, p. 8 in ECF).**

Pursuant to 28 U.S.C. § 2244, a one-year period of limitation applies to the filing of a federal habeas corpus petition by a person in custody pursuant to a state court judgment.  The limitation period runs from the latest of:

> **(A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;**
>
> **(B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;**
>
> **(C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or**
>
> **(D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.**

§ 2244(d)(1).  According to the tolling provision of § 2244(d), the time during which a "properly filed" application for state postconviction or other collateral review is pending shall not be counted toward any period of limitation.  28 U.S.C. § 2244(d)(2).

Of the four options listed above, the latest and only possible trigger for the instant petition is § 2244(d)(1)(D), the date the factual predicate of petitioner's claims could have been discovered through the exercise of due diligence.  This is consistent with Circuit case law holding that when, as here, a state prisoner is challenging the decision of an administrative board or agency, the limitations period begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of diligence."  *Brown v. Barrow*, 512 F.3d 1304, 1307 & n. 1 (11th Cir. 2008) (citing 28 U.S.C. § 2244(d)(1)(D) (applying § 2244(d)(1)(D) to petition challenging parole board's decision to deny parole); *see also e.g., Hawes v. Howerton*, No. 08-11121, 335 Fed. Appx. 882, 884 (11th

Cir. July 1, 2009) (applying § 2244(d)(1)(D) to petition challenging parole board's decision to revoke parole); *Adamson v. McNeil*, No. 09-10097, 2009 WL 3824778, at *3 (11th Cir. Nov. 19, 2009) (dicta) (applying § 2244(d)(1)(D) to petition challenging DOC's revocation of good time credits).

The date the factual predicate of petitioner's gaintime and overcrowding credits claims could have been discovered through the exercise of diligence is December 16, 2002. This is based on the following. Petitioner was in service of his life sentence until November 19, 2002 when he was paroled into his 35-year sentence in case number 87-1084. (Ex. A, p. 6 in ECF). While serving the life sentence, the DOC did not establish a tentative release date (TRD) for him because life is natural life, and a release date can only be established on a term of years. § 944.275, Fla. Stat. When petitioner began serving the 35-year term, the DOC established a TRD, which was the parole date (November 19, 2002), plus 35-years, less jail credit and less gaintime earned on the 35-year sentence. (Exs. A, N).[10] In December of 2002, petitioner received a printout dated December 11, 2002, showing that a release date of October 27, 2025 had been calculated. The printout is the notice the DOC provides to all inmates each month to inform them of their gain time awards and their TRD. (Ex. N). Rule 33-601.101, Florida Administrative Code provides, in part:

> (4) When processed. Incentive gain time is to be processed at the end of each month or upon receipt of progress reports on inmates housed by other agencies. All incentive gain time awards should be posted in the Offender Based Information System <u>by the close of business no later than the 12th of each month following the month of the award</u>.

---

[10]Included in the gaintime applicable to the 35-year term is 4200 days of basic gaintime pursuant to § 944.275(4)(a), Fla. Stat. Basic gaintime is applied at a rate of 10 days for every month of the sentence and is applied in a lump sum. Therefore, as soon as petitioner started serving his 35-year term, 4200 days were subtracted. (35 x 12 = 420 months @ 10 days per month = 4200 days). He is also eligible to earn incentive gaintime on a monthly basis at a rate of up top 20 days per month.

   **(a) Except in the case of extenuating circumstances, <u>inmates will receive written notice of the monthly gain time award within three working days of the last scheduled posting date</u>. In addition, the next scheduled progress report will reflect and summarize the awards of gain time made during the reporting period.**

*Id*. (emphasis added). Because December 11, 2002 was a Thursday, petitioner received the notice, at the latest, on December 16, 2002 which is the third working day following the date of the notice. When he received the notice of his TRD on the 35-year term, it did not reflect the application of gain time accrued during his life sentence or the application of overcrowding credits. (Ex. N). Thus, the factual predicate for petitioner's claims could have been discovered by him on December 16, 2002. On that date, the one-year time limitations clock began to run. Petitioner had 365 days to file a federal habeas petition.

   Petitioner pursued his claims separately in the administrative grievance process. He initiated the grievance process on his gain time claim on December 10, 2002. (Ex. K). He completed exhaustion on August 21, 2003, when the denial of his appeal to the Secretary of the DOC was filed with the agency clerk. (*Id*., p. 30 in ECF). Petitioner initiated the grievance process on his overcrowding credits claim on May 27, 2003. (Doc. 15, pp. 12, 13).[11] He completed exhaustion on August 21, 2003, when the denial of his appeal to the Secretary of the DOC was filed with the agency clerk. (*Id*., p. 40 in ECF). Respondent argues that whether timeliness is determined based on the petition as a whole, *see Walker v. Crosby*, 341 F.3d 1240,

---

[11] In the procedural history portion of respondent's motion, respondent states petitioner filed his initial grievance on the overcrowding credits claim on June 25, 2003 (doc. 15, p. 4 in ECF), but throughout the body of his motion respondent states petitioner filed his initial grievance on May 27, 2003 (*id*., pp. 12, 13 14 in ECF). The grievance provided by respondent, which respondent represents as the initial grievance on the overcrowding credits claim, is a copy of petitioner's June 25, 2003 grievance relating to the gain time issue, not the overcrowding credits issue. (*See* Ex. K, p. 27 in ECF *and* Ex. L, p. 32 in ECF). It is respondent's responsibility to provide relevant portions of the state court record. Because he has not done so, and because he concedes throughout his motion that the grievance process was initiated on May 27, 2003, the court will resolve the issue favorably to petitioner.

1245 (11th Cir. 2003), or determined individually as to each claim, *see Zack v. Crosby*, 607 F.Supp.2d 1291 (N.D. Fla. 2008), the instant petition is untimely.

Timeliness Based on the Petition as a Whole

Petitioner initiated the grievance process prior to December 16, 2002 by filing an informal grievance on December 10, 2002 concerning the gain time issue. The grievance process was pending until August 21, 2003, the date the denial of his appeal was filed with the agency clerk. Therefore, the limitations period began to run on that date.

The limitations period ran for 28 days, until petitioner filed his mandamus petition in the Okaloosa County Circuit Court on September 19, 2003. That petition was pending, and tolled the limitations period, from September 19, 2003 (the date it was filed in Okaloosa County) until January 12, 2004 (the date the 30-day deadline for appealing the Leon County Circuit Court's dismissal order expired).[12] The limitations period began to run again on January 13, 2004, and expired 337 days later on December 14, 2004. Although petitioner filed his mandamus petition in the Escambia County Circuit Court on January 14, 2004, that filing did not statutorily toll the limitations period under § 2244(d)(2), because it was untimely. It is well settled that a state postconviction petition rejected by the state court as untimely is not "properly filed" within the meaning of 28 U.S.C. § 2244(d)(2). *Pace v. DiGuglielmo*, 544 U.S. 408, 414, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005); *see also Allen v. Siebert*, 552 U.S. 3, 128 S.Ct. 2, 169 L.Ed.2d 329 (2007) (per curium) (reiterating that "When a postconviction petition is untimely under state law, that [is] the end of the matter for purposes of § 2244(d)(2).") (internal quotations and citations omitted). Moreover, petitioner's 2007 filings in the Leon County Circuit Court did not statutorily toll the limitations period under § 2244(d)(2), because the limitations period had already

---

[12]Because the 30th day was a Saturday (January 10, 2004), the deadline expired the following Monday, January 12, 2004.

expired. *See Alexander v. Secretary, Dep't of Corrections*, 523 F.3d 1291, 1294 (11th Cir. 2008) (holding that a state court motion for post-conviction relief cannot toll the limitations period if that period has already expired); *Webster v. Moore*, 199 F.3d 1256, 1269 (11th Cir. 2000) (same). Thus, without regard to equitable tolling, it would appear the petition is untimely.

In his reply, petitioner argues that his mandamus petition was "properly filed" in the Escambia County Circuit Court on January 14, 2004 (not June 24, 2004); that the Escambia County Circuit Court erred when it determined it was filed on June 24, 2004; and that he is entitled to statutory tolling for the time that proceeding was pending. (Doc. 21, pp. 9-11in ECF). But that argument is of no benefit to petitioner. Even if the state court had deemed the petition filed on January 14, 2004, it was still untimely under state law, because that was well after the 30-day deadline for seeking review of the DOC's August 21, 2003 final decision expired. *See Kalway v. Singletary*, 708 So.2d 267, 269 (Fla. 1998) (holding that a petition for extraordinary relief must be filed with the appropriate circuit court within thirty days from the time administrative remedies are exhausted); *see also Thompson v. State*, 761 So.2d 324, 326 (Fla. 2000) (holding that Florida courts "will presume that a legal document submitted by an inmate is timely filed if it contains a certificate of service showing that the pleading was placed in the hands of prison or jail officials for mailing on a particular date, if . . . the pleading would be timely filed if it had been received and file-stamped by the Court on that particular date.").

Petitioner further argues he is entitled to statutory tolling during the pendency of that proceeding, because the Escambia County Circuit Court erred in dismissing his petition rather than transferring it to the proper venue (the Leon County Circuit Court). (Doc. 21, pp. 11-13 in ECF). But that would not have benefitted petitioner either, because it would not have changed the petition's original filing date or affected the determination that it was filed outside the 30-day window. Thus, neither

of the foregoing arguments persuade this court that petitioner is entitled to statutory tolling for the time his Escambia County mandamus petition was pending. To the extent petitioner argues he is entitled to equitable tolling, that will be addressed later in this Report.

<u>Timeliness of Each Claim</u>

If the court were to determine the timeliness of each claim individually, the foregoing calculation would apply to petitioner's gain time claim, as that is the claim he began grieving on December 10, 2002.

Petitioner did not begin the grievance process on his overcrowding credits claim until May 27, 2003. By that time, 161 days of the limitations period had run. Upon exhausting his administrative remedies, petitioner allowed another 28 days to run (for a total of 189 days) until he filed his mandamus petition in the Okaloosa County Circuit Court on September 19, 2003. That petition was pending, and tolled the limitations period, from September 19, 2003 (the date it was filed in Okaloosa County) until January 12, 2004 (the date the 30-day deadline for appealing the Leon County Circuit Court's dismissal order expired). The limitations period began to run again on January 13, 2004, and expired 176 days later on July 6, 2004. Because petitioner is not entitled to statutory tolling for the Escambia County mandamus proceeding or the later Leon County proceedings, the instant habeas petition filed on May 14, 2009 is untimely, unless equitable tolling applies.

<u>Equitable Tolling</u>

Petitioner argues he is entitled to equitable tolling (for an unspecified period of time), because he has been diligent in pursuing his rights and because his untimely filing was the result of the Leon County Circuit Court's "void/illegal" dismissal of his original mandamus petition, which "created delays and confusion which resulted in great prejudice to petitioner." (Doc. 21, p. 13 in ECF).

The United States Supreme Court "has not expressly approved the application of equitable tolling to the AEDPA statute of limitations, but it has recently assumed, without deciding, that equitable tolling is available in this context." *Johnson v. Fla. Dep't of Corrections*, 513 F.3d 1328, 1332 n. 9 (11th Cir. 2008) (citing *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007)); *see also Pace v. DiGuglielmo*, 544 U.S. at 418 n. 8, 125 S.Ct. at 1814 n. 8 ("We have never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations.") (citation omitted). The Eleventh Circuit has expressly decided that equitable tolling can be applied to mitigate application of § 2244(d)'s statutory deadline. *Drew v. Dep't of Corrections*, 297 F.3d 1278, 1286 (11th Cir. 2002) ("It is by now clear in this Circuit that '[e]quitable tolling can be applied to prevent the application of the AEDPA's statutory deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.'") (quoting *Helton v. Secretary for the Dep't of Corrections*, 259 F.3d 1310, 1312 (11th Cir. 2001)). Equitable tolling is an extraordinary remedy which is applied in the following limited circumstances:

> Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when "extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition. Equitable tolling is an extraordinary remedy that is typically applied sparingly; however, it is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control *and* unavoidable even with diligence. The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.

*Wade v. Battle*, 379 F.3d 1254, 1264-65 (11th Cir. 2004) (internal quotations and citations omitted; emphasis in original).

Where the ultimate failure to file within the statutory period was a direct result of decisions made and actions taken by the petitioner, equitable tolling does not apply." *See, e.g., Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000) (holding that

"[a]n attorney's miscalculation of the limitations period or mistake is not a basis for equitable tolling,"); *Helton*, 259 F.3d at 1313 (holding that an attorney's miscalculation or misinterpretation does not constitute extraordinary circumstances); *see also Thompson v. Smith*, 173 Fed. Appx. 729, 733 (11th Cir. 2006) (stating that when a petitioner creates the situation that causes his petition to be time-barred, he cannot avail himself of the equitable power of the district court).

On the other hand, "when outside forces, such as the courts themselves, act independently of the petitioner to prevent him from timely filing a petition for habeas corpus, then, provided that the petitioner has exercised diligence, the district court may properly apply the doctrine of equitable tolling." *Thompson*, 173 Fed. Appx. at 733. "A lengthy delay between the issuance of a necessary order and an inmate's receipt of it might provide a basis for equitable tolling if the petitioner has diligently attempted to ascertain the status of that order and if the delay prevented the inmate from filing a timely federal habeas corpus petition." *Drew*, 297 F.3d at 1288. In *Knight v. Schofield*, 292 F.3d 709 (11th Cir. 2002), the Eleventh Circuit affirmed the application of equitable tolling because the petitioner did not learn of the denial of his state habeas application for eighteen months. *Id*. at 711. The court reasoned that the state court's shortcomings were "certainly beyond [the petitioner's] control," and because of his subsequent diligence, he was entitled to equitable tolling. *Id*.

In the instant case, the Leon County Circuit Court's mishandling of petitioner's original mandamus petition was an extraordinary circumstance. The dismissal was erroneous,[13] and the order affirmatively misled petitioner when it stated that the sentencing court was the appropriate (and only) court to address his claims. *See*

---

[13]This finding is not based on a mere allegation by petitioner that the dismissal order was erroneous. The parties do not appear to dispute that it was, and the evidence in the record establishes that it was – two judges in separate state courts found that the dismissal was incorrect.

*Pliler v. Ford*, 542 U.S. 225, 234, 124 S.Ct. 2441, 159 L.Ed.2d 338 (2004) (remanding a case back to the Ninth Circuit "for further proceedings given the Court of Appeals' concern that respondent had been affirmatively misled" when the district court instructed the petitioner that he had the option to dismiss his petition without prejudice even though any subsequent petition would have been beyond the statute of limitations); *see id.* at 235 (O'Connor, J., concurring) (explaining that "if the petitioner is affirmatively misled, either by the court or by the State, equitable tolling might well be appropriate") *see also id.* (Stevens, J., concurring in the judgment).

Relying on that order, petitioner presented his claims to the sentencing court (the Escambia County Circuit Court). After an unexplained disappearance of the original petition and other unexplained delays[14] all attributable to the court, the petition was dismissed as untimely. By that time (some twenty-one months later), the federal limitations period had expired.

Further, it bears noting that even the Leon County Circuit Court implicitly recognized the inequity caused by its actions when, in 2007, it considered petitioner's claims on the merits despite the passage of time.

Petitioner was diligent in pursing his rights. Within one month of the Leon County Circuit Court's 2003 dismissal order, petitioner filed a mandamus petition in the sentencing court. Within one month of learning that the Leon County's Circuit Court's order was incorrect and that he had an available remedy under Florida Rule of Civil Procedure 1.540(b), petitioner filed a motion for reinstatement. Within twenty days of exhausting his state judicial remedies, petitioner filed the instant habeas petition in this court.

---

[14]After his original petition was misplaced, petitioner filed another petition in June of 2004. After a one-year delay, the judge recused himself. The newly assigned judge was not made aware of petitioner's case until four months later. (Doc. 15, Ex. F, p. 26 n. 1 in ECF) (Judge Bell noting in his October 17, 2005 dismissal order that the case "was originally assigned to a different judge within the Escambia County Circuit Court. However, that judge recused himself on June 10, 2005. The present judge has only recently learned of Petitioner's case."

Respondent asserts petitioner is not entitled to equitable tolling, arguing as follows:

> There were no extraordinary circumstances that prevented Cole from having his claim heard timely. When Leon County dismissed his case for lack of jurisdiction (*Leon County I*), his remedy was to appeal. If he had, the time would have continued to toll and he would presumably have prevailed, as a litigant did shortly thereafter. <u>See</u>, <u>Bush v. State</u>, 945 So.2d 1207 (Fla. 2006) ("Proper venue for a prisoner's mandamus challenge to a sentence-reducing credit determination by the Department of Corrections, where the prisoner has exhausted administrative remedies and is not alleging entitlement to immediate release, is the circuit court in Leon County, where the Department is located"). Cole's case would have then been remanded to the Second Circuit Court for a decision on the merits, and time would continued [sic] to be tolled. If he had not prevailed on appeal, the time still would have tolled while the appeal was pending, and when it was final, he could have filed a timely petition in Escambia County, and a timely petition in federal court.

(Doc. 15, p. 12 in ECF).

But respondent's argument ignores the state courts' roles in the untimely filing of petitioner's federal habeas petition. To the extent respondent suggests petitioner could have prevented these extraordinary circumstances by appealing the Leon County Circuit Court's dismissal order, his argument is based on presumption, not fact. It further fails to recognize the state of the law at the time of the December 2003 dismissal order. The *Schmidt v. Crusoe*, 878 So.2d 61 (Fla. 2003) case, the case upon which the dismissal was based, was a new decision and its implications on the jurisdictional issue presented by petitioner's case were not yet known. The issue had not been addressed by the First DCA. It was not until March of 2004 that the First DCA found the Leon County Circuit Court's reasoning to be incorrect (in a different case). *See Burgess v. State*, 870 So.2d 217 (Fla. 1st DCA 2004). And it was not until 2006 that the Florida Supreme Court rejected it. *See Bush, supra*. Respondent's "presumption" concerning the effect of an appeal is further faulty,

because it is not true that had petitioner's appeal been unsuccessful "he could have filed a timely petition in Escambia County, and a timely petition in federal court." Petitioner's January 2004 petition was deemed untimely by the Escambia County court <u>because it was filed more than 30 days beyond the agency's final decision</u>. Respondent cites no authority for the proposition that the pendency of an appeal in the Leon County case would have changed that determination. In sum, this court cannot say that petitioner's untimely habeas petition was directly caused by his failure to appeal.[15]

In short, petitioner has established that his untimely filing was the result of circumstances that were both beyond his control and unavoidable with diligence. The court believes that it is patently unfair to allow respondent to gain a statute of limitations benefit from the state courts' mishandling of petitioner's mandamus petitions. Therefore, the undersigned concludes that petitioner is entitled to equitable tolling for the period he pursued mandamus relief in the sentencing court based on the Leon County Circuit Court's erroneous and misleading dismissal order (January 14, 2004 - February 28, 2007), and for the period he sought reinstatement of the erroneously dismissed Leon County Circuit Court mandamus proceeding (March 16, 2007 - August 14, 2007).

Accounting for these periods of equitable tolling, petitioner's habeas petition is timely. Judging the timeliness of the petition as a whole, the limitations period commenced on December 16, 2002. It was tolled until August 21, 2003 while petitioner pursued his administrative remedies. It then ran for 28 days until petitioner filed his original mandamus petition in the Okaloosa County Circuit Court. It was statutorily tolled while that proceeding was pending (September 19, 2003 -

---

[15]Respondent does not argue that petitioner was not diligent in pursuing his rights. And even if he did, petitioner's failure to appeal does not rebut the evidence of his diligence discussed earlier.

January 12, 2004).  The clock ran for 2 more days until it was equitably tolled while petitioner pursued mandamus relief in the Escambia County Circuit Court (January 14, 2004 - February 28, 2007).  After the appellate decision issued in that case, the limitations period ran for 15 days until petitioner filed his motion for reinstatement with the Leon County Circuit Court on March 16, 2007.  The limitations period was equitably tolled until the appellate decision in that case issued on August 14, 2007.  However, because petitioner's second Leon County Circuit Court mandamus proceeding was pending during this period (it commenced on April 19, 2007), the limitations period was statutorily tolled until March 26, 2009 (the date the mandate issued on appeal of the order denying relief).  It then ran for 48 days until May 14, 2009, when petitioner filed his federal habeas petition.  Thus, the limitations period ran for a total of 93 days (28 + 2 + 15+ 48).

Judging timeliness on a claim-by-claim basis, the foregoing analysis would apply to petitioner's gain time claim.  However, an extra 161 days would be added to the overcrowding credits claim, because petitioner allowed 161 days to lapse before initiating the grievance process on May 27, 2003.  Even so, petitioner would be entitled to the same statutory and equitable tolling discussed above, and his petition would be deemed timely (161 + 93 = 254 days).

Accordingly, it is respectfully RECOMMENDED:

1.  That respondent's motion to dismiss (doc. 15) be DENIED.

2.  That respondent be directed to address the merits of petitioner's claims or assert other procedural defenses within twenty-eight (28) days of the district court's order adopting this Report and Recommendation.

At Pensacola, Florida this 1st day of April, 2010.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).